1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6                           SAN JOSE DIVISION
7

8    HOMELINK INTERNATIONAL INC.,          Case No. 24-cv-02358-VKD
                    Plaintiff,
9
                                           **ORDER GRANTING IN PART AND
10          v.                             DENYING IN PART DEFENDANT'S
                                           MOTIONS TO DISMISS**
11   YU (RAIN) ZHANG,
                                           Re: Dkt. Nos. 15, 16
12                  Defendant.
13

14          Plaintiff Homelink International, Inc. ("Homelink International") filed this contract action

15   against defendant Yu (Rain) Zhang, asserting diversity jurisdiction, 28 U.S.C. § 1332.[1]  Dkt. No.

16   1.  Mr. Zhang moves pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) to dismiss the complaint.

17   Upon consideration of the moving and responding papers, as well as the oral arguments presented,

18   the Court grants Mr. Zhang's Rule 12(b)(1) motion, denies his Rule 12(b)(2) motion, and grants

19   his Rule 12(b)(6) motion, with limited leave to amend.

20   **I.    BACKGROUND**

21          According to the complaint, Homelink International is a real estate company in San Jose,

22   California that "registered with the state of California in 2015 and has conducted business in

23   [California] ever since."  Dkt. No. 1 ¶ 6.  Mr. Zhang is identified as a real estate agent who resides

24   in the province of Ontario, Canada and is licensed to conduct business there.  *Id*. ¶ 7.

25          Homelink International alleges that between 2017 and 2020, it entered into various written
26

27   _____
     [1] All parties have expressly consented that all proceedings in this matter may be heard and finally
28   adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 12, 21.

*United States District Court*
*Northern District of California*

referral agreements with Mr. Zhang in which Homelink International agreed to refer to Mr. Zhang clients interested in purchasing real estate in Canada. *Id*. ¶ 10. Mr. Zhang reportedly agreed to provide those clients with certain services and assist them with their Canadian real estate purchases. *Id*. Homelink International further alleges that Mr. Zhang agreed to pay Homelink International referral fees for successful real estate transactions, and to keep Homelink International apprised of the status of transactions. *Id*. ¶¶ 10, 11, 13.

The complaint alleges that, pursuant to the referral agreements, Homelink International referred clients to Mr. Zhang from 2017 to 2021. *Id*. ¶ 14. Mr. Zhang allegedly advised that each of those clients purchased at least one real estate property in Ontario. *Id*. According to Homelink International, due to delays by Mr. Zhang, the parties did not sign referral agreements for the transactions conducted in 2021. *Id*. ¶ 16. However, Homelink International alleges that the clients it referred to Mr. Zhang in 2021 completed purchases of Canadian real estate using Mr. Zhang's services. *Id*.

Homelink International claims that Mr. Zhang has not paid all referral fees as required by the agreements. Although Homelink International says that it "repeatedly demanded" over "the last few years" that Mr. Zhang pay the outstanding balance of referral fees, Mr. Zhang allegedly "made various excuses to [Homelink International] why he could not make the payments," "refused to apprise [Homelink International] of the status of these transactions," and then "stopped responding to [Homelink International]'s inquiries" in July 2022. *Id*. ¶ 17. Homelink International claims that Mr. Zhang owes $165,388.65 (U.S. dollars) in unpaid referral fees. *Id*. ¶¶ 15, 17.

On March 1, 2024, Homelink International sued Mr. Zhang in the Ontario Superior Court of Justice in Canada. *Id*. ¶ 18. Mr. Zhang challenged the Canadian court's jurisdiction to adjudicate the matter, based on a contractual choice of law provision selecting California law, and a forum selection clause providing for dispute resolution in "the courts of the state of California, USA." *Id*. ¶¶ 18, 19; *see also* Dkt. No. 24-2 ¶¶ 7-8; Dkt. No. 25-2 ¶¶ 7-8. There is no indication that Mr. Zhang filed any motion or other documents in the Canadian court to that effect, or that the Canadian court made any such findings or orders. Mr. Zhang says that Homelink International

United States District Court
Northern District of California

then dismissed its lawsuit in Canada. *See* Dkt. No. 15 at 8. Homelink International does not refute that assertion.

Homelink International subsequently filed the present action in this Court on April 19, 2024. Dkt. No. 1. The complaint asserts two claims against Mr. Zhang for breach of contract (claim 1) and breach of fiduciary duty (claim 2). Homelink International seeks payment of $165,388.65, plus 10% interest; compensatory damages "in an amount to be proven at trial"; reasonable "fees and expenses of [Homelink International]'s attorneys and experts"; and "such other or further relief as the Court may deem just and proper." *Id*. at 7.

Mr. Zhang moves pursuant to Rule 12(b)(1) to dismiss the complaint, asserting that Homelink International is not a party to several of the agreements at issue and therefore lacks standing to sue to enforce those contracts. Mr. Zhang also moves pursuant to Rule 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. In the alternative, he moves to dismiss this action based on the doctrine of forum non conveniens. Mr. Zhang also moves pursuant to Rule 12(b)(6) to dismiss the complaint, arguing that Homelink International's claims are time-barred and that the complaint otherwise fails to assert facts supporting plausible claims for relief.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Standing is a jurisdictional issue properly addressed under a Rule 12(b)(1) motion. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). A Rule 12(b)(1) motion to dismiss challenges a federal court's jurisdiction over the subject matter of a plaintiff's complaint. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Mr. Zhang raises a factual challenge to jurisdiction, in that he "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of

United States District Court
Northern District of California

the plaintiff's allegations." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (internal quotations and citation omitted).

As the party asserting federal subject matter jurisdiction, Homelink International bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B.    Rule 12(b)(2)

On a Rule 12(b)(2) motion challenging personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "When a motion to dismiss is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (internal quotations and citation omitted); *see also Boschetto*, 539 F.3d at 1015 (same). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotations and citations omitted); *see also Boschetto*, 539 F.3d at 1015 (same). However, the Court does not assume the truth of allegations in a pleading that are contradicted by affidavit, *Ayla, LLC*, 11 F.4th at 978, and "'[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor,'" *Boschetto*, 539 F.3d at 1015 (quoting *Schwarzenegger*, 374 F.3d at 800); *see also Ayla, LLC*, 11 F.4th at 978 ("factual conflicts between dueling affidavits must be resolved in the plaintiff's favor.") (internal quotations and citation omitted).

### C.    Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901

1    F.2d 696, 699 (9th Cir. 1990)).  In such a motion, all material allegations in the complaint must be

2    taken as true and construed in the light most favorable to the claimant.  *Id.*

3          However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

4    conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual

5    allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v.*

6    *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Moreover, the Court is not required to

7    "'assume the truth of legal conclusions merely because they are cast in the form of factual

8    allegations.'"  *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-CV-06064-LHK, 2018 WL

9    1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th

10   Cir. 2011) (per curiam)).  Nor does the Court accept allegations that contradict documents attached

11   to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d

12   1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted

13   deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055

14   (9th Cir. 2008).

15         Documents appended to or incorporated into the complaint or which properly are the

16   subject of judicial notice may be considered along with the complaint when deciding a Rule

17   12(b)(6) motion.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *Coto*

18   *Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  A court may take judicial notice of

19   facts that are "not subject to reasonable dispute" because they are "generally known" or "can be

20   accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

21   Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999.  Thus, a court properly may take judicial

22   notice of matters of public record, but cannot take judicial notice of disputed facts contained

23   within such records.  *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689

24   (9th Cir. 2001)).

25   **III.    DISCUSSION**

26         **A.    Rule 12(b)(1) Motion to Dismiss for Lack of Standing**

27         Mr. Zhang moves pursuant to Rule 12(b)(1) to dismiss the complaint, arguing that

28   Homelink International lacks standing because several of the agreements at issue are contracts to

United States District Court
Northern District of California

5

which Homelink International is not a party.  Under Article III of the Constitution, federal courts have jurisdiction to decide only actual cases or controversies, U.S. Const., art. III, § 2, and Homelink International has standing to sue if it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Homelink International's injury must be both "particularized" and "concrete."  A "particularized" injury is one that "'affect[s] the plaintiff in a personal and individual way.'"  *Spokeo, Inc.*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). A "concrete" injury "must actually exist" and must be "real, and not abstract."  *Id*. at 340.  In diversity actions such as this one, the relevant state law determines whether the plaintiff is the proper party to maintain the action.  *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093-94 (9th Cir. 2004).

As a preliminary matter, the Court observes that the complaint does not specifically identify the agreements in question (and sometimes refers to a single agreement).  In support of his motion, Mr. Zhang submitted a declaration acknowledging that he executed several agreements: one dated February 8, 2017 with Homelink Overseas Properties ("Overseas"); one dated May 14, 2018 with Homelink International-Houston, LLC ("Houston"); and one dated May 1, 2020 with Homelink International.  *See* Dkt. No. 16-1 ¶¶ 4-6, Exs. 1-3.  In its opposition papers, Homelink International identifies seven referral agreements—including the three identified by Mr. Zhang—on which Homelink International says its claims are based.  *See* Dkt. No. 25-1 ¶¶ 7,8 & Exs. 1-6. Although Mr. Zhang stated an objection at the motion hearing to the additional agreements submitted with Homelink International's opposition papers, he has provided the Court with no sound basis to decline to consider those additional agreements, while focusing only on the three agreements he identifies.  But even accepting Homelink International's assertion that its claims are based on all seven agreements, the Court concludes that Homelink International has not demonstrated its standing to pursue claims based on the three agreements executed by Overseas or Houston.

Of the seven agreements Homelink International says it seeks to enforce, Homelink

6

United States District Court
Northern District of California

1    International does not dispute that one is dated February 8, 2017 and identifies the contracting

2    parties as Mr. Zhang and Overseas, which Homelink International claims is its parent company.

3    *See* Dkt. No. 16-1, Ex. 1; Dkt. No. 25 at 1, 2; *see also* Dkt. No. 25-1 ¶ 7.  That agreement says that

4    it is governed by the laws of Ontario, Canada, and contains a forum selection clause providing for

5    "exclusive jurisdiction" of the courts of Ontario, Canada.  *See* Dkt. No. 16-1 ¶ 4, Ex. 1.  Two other

6    agreements—a May 14, 2018 agreement and a December 12, 2018 addendum—identify the

7    contracting parties as Mr. Zhang and Houston, which Homelink International claims is its wholly-

8    owned subsidiary.  Dkt. No. 25 at 1; *see also* Dkt. No. 25-1 ¶ 7, Exs. 1, 2.  The May 14, 2018

9    agreement includes a choice of law provision selecting Texas law, as well as a forum selection

10    clause stating that in the event of a disagreement, "either party has the right to submit the dispute

11    to the courts of the state of Texas, USA."  *See* Dkt. No. 25-1 ¶ 7, Exs. 1, 2.  Both of these

12    provisions appear to apply also to the December 12, 2028 addendum.  *See* Dkt. No. 25-1, Ex. 1 at

13    ECF 9.

14         In California, the general rule is that "only a party to the contract may sue for breach of the

15    agreement's terms."  *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th

16    1078, 1092 (2005); *see also Hatchwell v. Blue Shield of Cal.*, 198 Cal. App. 3d 1027, 1034 (1988)

17    ("Someone who is not a party to the contract has no standing to enforce the contract or to recover

18    extra-contract damages for wrongful withholding of benefits to the contracting party.").  Texas

19    law apparently recognizes the same general rule.  *See Miller v. Uni-Pixel Inc.*, No. 17-cv-02187-

20    NC, 2017 WL 3007082, at *3-*4 (N.D. Cal. July 14, 2017) (discussing Texas law).  Although

21    there are exceptions to the general rule, Homelink International makes no attempt to allege or

22    explain—based on cogent authority under the laws of California, Texas, or Ontario, Canada—how

23    its claim for breach of the Overseas and Houston agreements fits within any such exception.

24         Instead, Homelink International maintains that the salient fact is that it is the party that

25    entered into the remaining four agreements with Mr. Zhang, including the most recent May 14,

26    2020 agreement, which are all governed by California law.  *See* Dkt. No. 25-1 ¶¶ 7, 8, Exs. 3-6.

27    Homelink International principally argues that the integration clause in the May 14, 2020

28    agreement provides Homelink International with standing to enforce all seven contracts, including

7

those entered into by Overseas and Houston.  That integration clause provides:

> 12.6 Entire Agreement
>
> (a) This Agreement constitutes the sole and entire understanding between the Parties with respect to the subject matter hereof and may not be altered or amended, except in writing signed by both Parties.
>
> (b) This Agreement supersedes all prior communications or agreements written or oral between Partner and Homelink (or its affiliated company shown as Beijing Homelink Real Estate Agency Co., Ltd., Homelink Overseas Property, Homelink Real Estate Agency Co., Ltd., International Operations of Homelink, Homelink and Lianjia in the agreements), and is intended as a complete and exclusive statement of the terms of the Agreement between the Parties.

Dkt. No. 25-1, Ex. 6.  Homelink International posits that the provision stating that the May 14, 2020 agreement "supersedes all prior communications or agreements" between the parties (and certain other entities) means that all transactions covered by prior agreements between Mr. Zhang and Overseas or Houston are now governed by the terms of the May 14, 2020 agreement between Mr. Zhang and Homelink International.  At the motion hearing, Homelink International further asserted that Houston has been dissolved (*see* Dkt. No. 25-1 ¶ 6), and suggested that the parties understood that Homelink International is the only remaining entity to enforce any agreements between Mr. Zhang and Houston.  However, Homelink International also acknowledged that the subject agreements do not clearly reflect that alleged understanding.  *See* Dkt. No. 29.

Nor has Homelink International provided any authority supporting its interpretation of the May 14, 2020 agreement's integration clause.  In California, an integration clause generally offers evidence that the parties intended the writing to be a final expression of their agreement regarding the stated subject matter.  *See generally MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1092 n.2 (N.D. Cal. 2017).  The May 14, 2020 agreement's integration clause says nothing about recasting or refashioning the terms of prior agreements between Mr. Zhang and Overseas or Houston.  Nor does the May 14, 2020 agreement clearly state that the parties intended or understood that the May 14, 2020 agreement would replace all prior agreements between Mr. Zhang and Overseas or Houston, or that all completed transactions for which Mr. Zhang

reportedly owes fees are subsumed within the terms of any agreement between Mr. Zhang and Homelink International.  Indeed, other language in the integration clause indicates that the parties intended the May 14, 2020 agreement to be the *sole* statement of their agreed terms, to the *exclusion* of all other agreements.  *See* Dkt. No. 25-1, Ex. 6 (stating that the agreement is "intended as a *complete and exclusive* statement of the terms of the Agreement between the Parties.") (emphasis added).  That language indicates that the integration clause has precisely the opposite effect from the one Homelink International advocates.

Homelink International otherwise offers general averments about a vague series of corporate transactions, including that in 2015, KE Holdings, Inc. ("KE Holdings"), identified as a real estate platform, formed Overseas to manage KE Holding's business in various countries, including the United States and Canada.  *See* Dkt. No. 25-1 ¶ 3.  Homelink International says that since its inception in 2015, it "has been managing overseas business in the United States and Canada on behalf of [Overseas] and ultimately KE Holdings."  *Id*. ¶ 4.  Additionally, Homelink International says that it is the "sole Manager" of Houston, which was dissolved in 2020.  *Id*. ¶ 6.  However, Texas franchise tax records submitted by Homelink International indicate that Homelink International was one of two "Manager[s]" and that Houston had a third "Governing" member.  *See* Dkt. No. 25-2 ¶ 5, Ex. 3.  Further, Homelink International says that on June 1, *2017*, it registered Overseas, Houston, and Homelink International as "Homelink Entities" in Texas, but Homelink International does not explain the significance of this assertion with respect to Homelink International's purported standing to enforce contracts executed by Overseas or Houston.  Nor does Homelink International explain its assertion that these "Homelink Entities" have been conducting business with Mr. Zhang from *2016* to 2021.  Dkt. No. 25-1 ¶ 7.  In sum, Homelink International does not allege or explain how any of these corporate transactions or purported relationships provide Homelink International authority to sue to enforce contracts on behalf of Overseas or Houston.

Accordingly, to the extent Homelink International's claims are based on the three identified agreements entered into by Overseas or Houston, those claims are dismissed.

1

**B.      Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**[2]

2

Although the remaining four agreements at issue identify Homelink International as the

3

contracting party and allow suits regarding those agreements to be brought in "the courts of the

4

state of California, USA," Mr. Zhang maintains that as a Canadian citizen and resident, he has no

5

contacts with California that would justify the Court's exercise of personal jurisdiction over him.

6

Alternatively, Mr. Zhang argues that the complaint should be dismissed under the doctrine of

7

forum non conveniens, asserting that Canada or China are more suitable fora for the litigation of

8

the parties' disputes.

9

"'Federal courts ordinarily follow state law in determining the bounds of their jurisdiction

10

over persons.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571

11

U.S. 117, 125 (2014)).  "Because California's long-arm jurisdictional statute is coextensive with

12

federal due process requirements, the jurisdictional analyses under state law and federal due

13

process are the same." *Schwarzenegger*, 374 F.3d at 800-01 (citation omitted).  "For a court to

14

exercise personal jurisdiction over a nonresident defendant, that defendant must have at least

15

'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend

16

traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v.*

17

*Washington*, 326 U.S. 310, 316 (1945)).

18

Preliminarily, Mr. Zhang contends that the "true party" to the remaining four agreements is

19

not Homelink International, but Overseas, which he says is a Chinese company based in Beijing,

20

China.  *See* Dkt. No. 15 at 2; Dkt. No. 15-1 ¶ 4.  Mr. Zhang also says that, while the agreements

21

themselves are in English, his communications regarding all of the referral agreements in question

22

_____

23

[2] The Court rejects Homelink International's assertion that Mr. Zhang waived any objection to
personal jurisdiction by making a "general appearance" in this action.  "An appearance ordinarily

24

is an overt act by which the party comes into court and submits to the jurisdiction of the court.
This is an affirmative act involving knowledge of the suit and an intention to appear.'" *Benny v.*

25

*Pipes*, 799 F.2d 489, 492 (9th Cir.1986).  Before filing the present motions to dismiss, Mr. Zhang
submitted a request for an extension of time to respond to the complaint, followed by a stipulated

26

request for the same.  Dkt. Nos. 7, 9.  Mr. Zhang's request indicated that counsel needed
additional time to research issues concerning a California connection for the present action.  *See*

27

Dkt. No. 7.  "Generally, a motion to extend time to respond gives no hint that the answer will
waive personal jurisdiction defects, and is probably best viewed as a holding maneuver while

28

counsel consider how to proceed."  *Benny*, 799 F.2d at 493.  The Court does not find a basis to
conclude that Mr. Zhang waived his objections to personal jurisdiction.

United States District Court
Northern District of California

were made in Chinese (written and spoken), through the same Overseas agents.  Dkt. No. 15-1

¶ 13.  However, Homelink International alleges that it is a registered California corporation that

holds a California real estate license and maintains an office in San Jose, California, and it has

submitted evidence supporting those allegations.  *See* Dkt. No. 1 ¶ 6; Dkt. No. 24-1 ¶¶ 4, 5; Dkt.

No. 24-2 ¶¶ 3-4, 6 & Exs. 1, 2, 4.  Mr. Zhang has presented no evidence to the contrary and no

compelling basis to conclude, for present purposes, that Overseas is the real party in interest to the

four agreements entered into by Homelink International.

Homelink International asserts two bases for personal jurisdiction:  (1) the forum selection

clauses in each of the four agreements in question and (2) specific jurisdiction.[3]  For the reasons

discussed below, the Court agrees with Homelink International that the subject forum selection

clauses are sufficient bases to exercise specific personal jurisdiction over Mr. Zhang.

### 1.    Forum Selection Clause

The four agreements signed by Homelink International and Mr. Zhang each contain the

following forum selection clause:

> All disputes arising from or in connection with this Agreement shall
> in the first place be resolved by the Parties by way of amicable
> consultation.  If the dispute is still not resolved, either Party has the
> right to submit the dispute to the courts of the state of California,
> USA.

*See* Dkt. No. 24-1 ¶ 8 & Exs. 3-6.  Homelink International argues that the presence of this forum

selection clause in the subject agreements establishes Mr. Zhang's consent to personal jurisdiction

in California, including in this Court.  Mr. Zhang disagrees.  While he does not dispute that

Homelink International filed this action in a forum that the forum selection clause permits, he

contends that because the clause merely permits jurisdiction in California, but does not require it,

his consent to such a clause does not support the exercise of personal jurisdiction over him.  *See*

Dkt. No. 27 at 3-4.

Although Mr. Zhang argues for the application of California law with respect to the forum

selection clause in question (*see* Dkt. No. 27 at 3), even in diversity actions, federal law applies to

---

[3] Homelink International does not contend that the Court has general personal jurisdiction over
Mr. Zhang.

1    interpret a forum selection clause.  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081,

2    1086 (9th Cir. 2018) (citations omitted); *Prods. & Ventures Int'l v. Axus Stationary (Shanghai)*

3    *Ltd.*, No. 16-cv-00669-YGR, 2017 WL 201703, at *5-*7 (N.D. Cal. Jan. 18, 2017) (applying

4    federal law to dispute regarding whether forum selection clause provided basis for personal

5    jurisdiction).  Under federal law, a valid forum selection clause operates as consent to a court's

6    personal jurisdiction.  *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n.14 (1985)

7    (recognizing that personal jurisdiction is "waivable" through "a variety of legal arrangements,"

8    including forum selection provisions).  Parties may thus consent to jurisdiction through a forum

9    selection clause in a contract, *see Secs. & Exch. Comm'n v. Ross*, 504 F.3d 1130, 1149 (9th Cir.

10   2007), and "a forum selection clause may give rise to waiver of objections to personal jurisdiction,

11   provided that the defendant agrees to be so bound," *Holland Am. Line, Inc. v. Wartsila N. Am.,*

12   *Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (citations omitted).

13        "When parties have contracted in advance to litigate disputes in a particular forum, courts

14   should not unnecessarily disrupt the parties' settled expectations."  *Atl. Marine Const. Co., Inc. v.*

15   *U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 66 (2013).  "In all but the most unusual cases,

16   therefore, 'the interest of justice' is served by holding parties to their bargain," *id.*, and a forum

17   selection clause "should control absent a strong showing that it should be set aside," *M/S Bremen*

18   *v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).  A forum selection clause is unenforceable if the

19   party resisting enforcement makes a strong showing that (1) "the clause [i]s invalid for such

20   reasons as fraud or overreaching," (2) "enforcement would contravene a strong public policy of

21   the forum in which suit is brought, whether declared by statute or by judicial decision," or

22   (3) proceeding in the selected forum will be "so gravely difficult and inconvenient" that the

23   complaining party "will for all practical purposes be deprived of his day in court."  *Bremen*, 407

24   U.S. at 15, 18.  As the party resisting the forum selection clause, Mr. Zhang bears a "heavy burden

25   of proof" to establish that enforcement of the parties' preselected forum is unwarranted.  *Id*. at 17;

26   *see also Atl. Marine*, 571 U.S. at 63.

27        Mr. Zhang does not contend that the forum selection clause is invalid due to issues of fraud

28   or overreaching.  Nor does he contend that enforcement of the forum selection clause would

United States District Court
Northern District of California

contravene a strong public policy. Instead, he argues that because the forum selection clause in the Homelink International agreements is merely permissive, and not mandatory, it does not provide a basis for this Court's exercise of personal jurisdiction over him. "A permissive clause allows suit to be brought in a particular forum, but does not preclude litigation elsewhere." *Tech. Credit Corp. v. N.J. Christian Academy, Inc.*, 307 F. Supp. 3d 993, 1007 (N.D. Cal. 2018). "A mandatory clause, by contrast, 'clearly require[s] *exclusive* jurisdiction.'" *Id.* (quoting *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)). Homelink International does not dispute that the forum selection clause in question is worded permissively. However, Mr. Zhang has not cited any federal authority supporting his contention that only mandatory clauses signify consent to jurisdiction, "nor do[es he] articulate why such a distinction would ultimately matter." *Prods. & Ventures Int'l*, 2017 WL 201703 at *6. As the parties' agreements "explicitly provide[] contractual permission to file suit in California . . . [s]uch entitlement would be nullified unless the parties also consented to jurisdiction" in California. *Id.* at *7. The Court finds that the forum selection clause in the Homelink International agreements indicates he consents to jurisdiction in California and that this consent is sufficient for the exercise of specific personal jurisdiction over Mr. Zhang. A minimum contacts analysis therefore is unnecessary. *See Eventbrite, Inc. v. Loranger*, No. 19-cv-04083-RS, 2019 WL 11499335, at *4 (N.D. Cal. Nov. 19, 2019).

### 2.    Forum Non Conveniens

Alternatively, Mr. Zhang argues that the forum selection clause should not be enforced based on the doctrine of forum non conveniens. *See* Dkt. No. 15 at 17-22; Dkt. No. 27 at 7-9. "In the typical case not involving a forum-selection clause," a district court considering a forum non conveniens motion "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62.[4] "The calculus changes, however, when the parties' contract contains a valid forum-selection clause," because "[w]hen parties agree to a forum-

---

[4] *Atlantic Marine* focused on motions to transfer venue under 28 U.S.C. § 1404(a); however, at several points in the decision, the Supreme Court explained that the common law doctrine of forum non conveniens is governed by the same considerations. 571 U.S. at 60-61, 62, 66 n.8.

selection clause, they waive the right to challenge the preselected forum as inconvenient or less

convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. at 63, 64.

"A court accordingly must deem the private-interest factors to weigh entirely in favor of the

preselected forum." *Id*. at 64.  "As a consequence, a district court may consider arguments about

public-interest factors only." *Id*.  "Public-interest factors may include the administrative

difficulties flowing from court congestion; the local interest in having localized controversies

decided at home; and the interest in having the trial of a diversity case in a forum that is at home

with the law." *Id*. at 62 n.6 (cleaned up).

   Mr. Zhang argues that either Canada or China are appropriate alternative fora for

resolution of the parties' dispute.  However, he offers no compelling reason to conclude that the

court congestion factor weighs in favor of either Canada or China.  He merely asserts, in highly

conclusory fashion, that "administrative difficulties from congestion still exist and can impact the

timely resolution of cases."  Dkt. No. 27 at 8.  Mr. Zhang argues that the local interest factor is

negligible because, he maintains, the real parties in interest are Chinese and Canadian.

Additionally, he notes that Homelink International's claimed referral fees are all based on

Canadian real estate.  *See* Dkt. No. 15 at 20.  As discussed above, Homelink International alleges

and has presented evidence, unrefuted on the present motion, that it is a California corporation

doing business in San Jose, California.  While the real estate transactions giving rise to the

claimed referral fees are based on real property located in Canada, a central point of the

agreements between Homelink International and Mr. Zhang, and the essence of the complaint, are

the referral fees Mr. Zhang allegedly owes to Homelink International.  Moreover, it is not lost on

this Court that, as he acknowledged at oral argument (*see* Dkt. No. 29), Mr. Zhang previously

contested jurisdiction in Canada in favor of dispute resolution in California.  As it is undisputed

that the Homelink International agreements are governed by California law, the interest in having

the trial of a diversity case in a forum that is at home with the law weighs in favor of maintaining

the present action in California.  In sum, Mr. Zhang has not met his "heavy burden" to establish

that proceeding in the selected forum will be "so gravely difficult and inconvenient" that he "will

for all practical purposes be deprived of his day in court." *Bremen*, 407 U.S. at 15, 18.

For these reasons, the Court denies Mr. Zhang's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, or in the alternative, for forum non conveniens.

### C.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim for Relief

With respect to the remaining four agreements between Mr. Zhang and Homelink International, Mr. Zhang argues that the complaint must be dismissed for failure to state a claim for relief.

#### 1.    Requests for Judicial Notice

The parties have each asked the Court to take judicial notice of various documents. Dkt. Nos. 17, 26. A court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Thus, a court properly may take judicial notice of matters of public record, but cannot take judicial notice of disputed facts contained within such records. *Lee*, 250 F.3d at 689.

The Court grants the parties' requests for judicial notice of the four agreements between Homelink International and Mr. Zhang, not as to disputed matters, but solely for the existence of those agreements and the dates they were signed—all of which appear to be matters that are not subject to reasonable dispute. *See* Dkt. No. 16-1, Ex. 3; Dkt. No. 25-1, Exs. 3-6. The parties' requests for judicial notice are otherwise denied.

#### 2.    Claim 1:  Breach of Contract

Mr. Zhang principally contends that any claims for breach of contract, whether based on written or oral agreements, are time-barred. To the extent Homelink International timely filed its complaint based on referral fees covered by the May 2020 agreements, Mr. Zhang argues that the claimed fees do not provide a basis for diversity jurisdiction, inasmuch as the complaint itself indicates that the claimed referral fees for all 2020 transactions combined do not meet the $75,000 threshold amount-in-controversy requirement. *See* Dkt. No. 1 ¶ 15.

The statute of limitations is an affirmative defense. *See* Fed. R. Civ. P. 8(c). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.*

*Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

The complaint alleges that section 4.1 of the parties' agreements required Mr. Zhang to pay 50% of the claimed referral fees "'within 6 months since the signing of the purchase agreement and the deposit of 20% has been received by the Developer,'" with the remaining 50% of the referral fee to be paid "'within 6-8 months upon final closing' of the transaction." *Id.* ¶ 11. The complaint does not provide specific dates of any transaction or event, and instead refers to referral fees based on a "Purchase Year." *See id.* ¶ 15.

Two of the four written Homelink International agreements are dated March 1, 2020; one is dated May 1, 2020; and one is dated May 14, 2020. (*see* Dkt. No. 16-1, Ex. 3; Dkt. No. 25-1, Exs. 3-6). The complaint does not specifically identify any particular agreement or tie the identified transactions to any specific contract. However, the Court infers from the complaint that the claimed fees covered by the 2020 agreements pertain to the identified 2020 transactions at issue. *See* Dkt. No. 1 ¶ 15. Although Homelink International argues that the 2021 transactions at issue are covered by an automatic renewal provision of the May 14, 2020 agreement, no such allegation appears in the complaint. Instead, the complaint indicates that the claimed referral fees for 2021 transactions are based on oral contracts. *See id.* ¶ 16 ("[T]he parties did not sign the Referral Agreements for the transactions conducted in 2021.").

In California, an action for breach of a written contract must be filed within four years from the accrual of the cause of action. Cal. C.C.P. § 337. The limitations period for actions based on an oral contract is two years. Cal. C.C.P. § 339. As noted above, the complaint is vague regarding the specific dates of events that allegedly triggered the timing of Mr. Zhang's payment of referral fees. However, Homelink International does not squarely dispute Mr. Zhang's contention that the complaint's allegations indicate that Homelink International filed suit outside the applicable limitations periods for the four agreements it entered with Mr. Zhang. Instead, Homelink International argues that the limitations periods are tolled because it "did not discover [Mr. Zhang]'s clear intention to breach the Referral Agreements until July 2022[.]" Dkt. No. 25 at 1, 7-8. But the complaint itself indicates that Homelink International knew of Mr. Zhang's failure to pay referral fees for at least a "few years" prior to July 2022, and that July 2022 was simply

United States District Court
Northern District of California

United States District Court
Northern District of California

1    when Mr. Zhang stopped responding to Homelink International's inquiries and demands for

2    payment. *See* Dkt. No. 1 ¶ 17. Homelink International thus fails to persuade that tolling applies

3    on that basis. *See Camsi IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1536 (1991)

4    (discussing discovery rule).

5         To the extent Homelink International timely filed its complaint based on referral fees

6    covered by the May 2020 agreements, Mr. Zhang maintains that the claimed fees for all 2020

7    transactions do not exceed the $75,000 amount-in-controversy threshold required for diversity

8    jurisdiction. Homelink International argues that the fees for the 2021 transactions at issue are

9    covered by the May 14, 2020 agreement, and that the combined fees for the subject 2020 and 2021

10   transactions exceed $100,000 U.S. dollars. *See* Dkt. No. 25 at 1, 6. As discussed above, however,

11   the complaint contains no allegations or any basis to infer that the 2021 transactions were

12   governed by the May 14, 2020 agreement.

13        Accordingly, Homelink International's claim for breach of contract is dismissed.

14            **3.    Claim 2:  Breach of Fiduciary Duty**

15        Homelink International's second claim for relief alleges that "[a] fiduciary relationship

16   exists between [Homelink International] and [Mr. Zhang] pursuant to the business relationship

17   between the parties." Dkt. No. 1 ¶ 29. The complaint further alleges that Mr. Zhang breached his

18   fiduciary duty to Homelink International by failing to comply with his contractual obligations to

19   pay referral fees and keep Homelink International apprised of the status of transactions, and by

20   "avoiding legal liabilities by challenging jurisdiction of his local court inadequately." *Id.* ¶ 30.

21   Mr. Zhang moves to dismiss this claim on the ground that the complaint does not allege any facts

22   indicating that the parties' "business relationship" gave rise to a fiduciary relationship. The Court

23   agrees with Mr. Zhang.

24        "Before a person can be charged with a fiduciary obligation, he must either knowingly

25   undertake to act on behalf and for the benefit of another, or must enter into a relationship which

26   imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech*, 43 Cal.

27   4th 375, 386 (2008) (cleaned up) (citation omitted). The complaint contains no allegations

28   indicating that the parties entered into anything more than an ordinary business relationship in

which each party contracted to achieve a mutually beneficial arrangement.  Such allegations are insufficient to establish a fiduciary relationship.  *See id*. (finding no fiduciary relationship where "contractual provisions indicate that the parties' common goal was to achieve a mutually beneficial arrangement, not that Genentech had undertaken a fiduciary obligation to act on behalf of and for the benefit of the other.") (quotations and citation omitted); *see also generally World Surveillance Grp., Inc. v. La Jolla Cove Investors, Inc*., 66 F.Supp.3d 1233, 1235 (N.D. Cal. 2014) ("The obligation to put the interests of the other party first is why a fiduciary relationship generally does not arise out of ordinary arms-length business dealings.  In a typical business contract or relationship, one party does not commit to act in the other party's best interest rather than in its own.").

Accordingly, Homelink International's claim for breach of fiduciary duty claim is dismissed.

## IV.    LEAVE TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "should be freely given when justice so requires," and "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotations and citations omitted).  "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Homelink International makes a general request for leave to amend, but does not identify how or what it could fix on amendment.  *See* Dkt. No. 25 at 9.  However, as noted throughout this order, the complaint is vague and ambiguous in a number of respects.  While Homelink International's briefing and supporting declaration suggest it may be able to plead additional facts in support of a viable breach of contract claim against Mr. Zhang, the same cannot be said for its breach of fiduciary duty claim.  As the law generally favors decisions on the merits, the Court will

1  give Homelink International leave to amend with respect to its breach of contract claim only.

2  **V.    CONCLUSION**

3      Based on the foregoing, the Court (1) grants Mr. Zhang's Rule 12(b)(1) motion for lack of

4  standing, (2) denies his Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, and in

5  the alternative, for forum non conveniens, and (3) grants his Rule 12(b)(6) motion to dismiss for

6  failure to state a claim.  Homelink International is given leave to amend its claim for breach of

7  contract, subject to its Rule 11 obligations.  The Court dismisses the breach of fiduciary duty

8  claim with prejudice.

9      To the extent it chooses to file an amended complaint, Homelink International must do so

10  no later than **September 26, 2024**.

11      **IT IS SO ORDERED.**

12  Dated: September 12, 2024

13

14

15  Virginia K. DeMarchi
    United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28